Submitted on record January 14, accused suspended March 16, 1982

In Re: Complaint as to the Conduct of
# DONALD W. CHAMBERS,
*Accused.*

(OSB 79-62, SC 28183)

642 P2d 286

Eric C. Larson, Gresham, filed a Petition for Adoption of the Decision and Recommendation of the Review Board.

No appearance contra.

PER CURIAM

## PER CURIAM

The Oregon State Bar filed a complaint against Donald W. Chambers, a member thereof, accusing him of unethical conduct in three separate causes:

(1) In negligently representing Lisa L. Hartel with regard to her claims for personal injuries and property damages resulting from an automobile accident in contravention of the Code of Professional Responsibility, particularly DR 6-101(A)(3); DR 7-101 and DR 7-102(A)(5).

(2) In not reasonably and effectively representing Charles Whillhite in a criminal case. DR 6-101(A)(1)(2)(3), and DR 7-101(A(3).

(3) In contacting Nedra B. Thatcher, the potential adverse party in an automobile collision, and identifying himself as the insurance agent for his client, Delbert Marshall, in contravention of DR 7-102(A)(5).

Chambers did not answer the complaint and allowed the Oregon State Bar to enter a default against him. Chambers did not appear either in person or by counsel at the hearing before the Trial Board. Documentary evidence was received and one witness testified at the hearing before the Trial Board. Findings of fact were entered and Chambers was found guilty of the third cause and guilty of a part of the specifications set out in each of the first and second causes.

The Trial Board recommended that Chambers be suspended from the practice of law in this state for a period of two years. The Disciplinary Review Board concurred with the Trial Board in its findings of fact, conclusion, and recommendation.

It is this court's obligation to make an independent review of the evidence. The accused is entitled to the presumption that he is innocent of the charges made against him. The charges must be proved by clear and convincing evidence. *In re Galton,* 289 Or 565, 578, 615 P2d 317 (1980). "Clear and convincing evidence means that the truth of the facts asserted is highly probable." *Supove et al, v. Densmoor et ux,* 225 Or 365-372, 358 P2d 510 (1961).

The first cause of complaint arises out of Chambers' representation of Lisa L. Hartel in connection with an automobile collision. On May 4, 1973, the Hartel automobile collided with an automobile driven by Ella G. Drennen at Brazee and Ninth Streets in the city of Portland.

Hartel suffered personal injuries and damage to her vehicle and within one week retained Chambers to represent her. Chambers requested and received a medical report describing Hartel's injuries.

Chambers negotiated with Drennen's insurance company and received offers of settlement, but did not inform Hartel or consult with her about them. On November 9, 1974, Hartel verified a complaint prepared by Chambers. The complaint was not filed until May 2, 1975. The summons Chambers prepared was defective on its face because it failed to set a return time and did not contain the address and telephone number of the attorney. The summons was not returned for filing within the 60 days required by former ORS 15.060.

Drennen's attorney filed a motion to quash the service of summons but did not call it up for argument in order to allow Chambers an opportunity to negotiate a settlement directly with the insurance company. Eventually the motion to quash came before the presiding judge of Multnomah County who conditionally granted Chambers' motion to amend the summons by interlineation to cure the defects provided the original summons was returned to the court within one week. Chambers failed to comply.

Later when the case was back before the presiding judge Chambers represented to the court that the case had been settled and it was dismissed under a 60 day dismissal order, effective April 12, 1976.

In June 1976, after many unsuccessful attempts to contact Chambers, Hartel contacted another attorney to find out the status of her case.[1] In September, 1976, after being substituted as attorneys of record, Hartel's new lawyers moved to set aside the order of dismissal and Drennen's attorney filed a supplemental motion to quash the service of summons. The court allowed both motions. The net effect was to cut off Hartel's cause of action because the statute of limitations had expired.

In April, 1977, Hartel through her new attorneys filed a malpractice action against Chambers alleging that

---

[1] Chambers worked out of his home and did not have a secretary or answering service.

he had been negligent and reckless in his representation of her. Chambers filed an answer generally denying the complaint, but failed to appear for the trial. The trial court on December 15, 1977 entered a judgment for Hartel and against Chambers for $7,000 general damages and $5,000 punitive damages.[2] As of the middle of February, 1980, Hartel had been unable to collect any money on her judgment.

The charging part of the first cause of complaint in this case is as follows:

"The accused was negligent[3] in the representation of LISA L. HARTEL in one or more of the following particulars, to-wit:

"(1)   He failed to properly prepare the Summons in a lawsuit filed on behalf of LISA L. HARTEL, and further, he failed to effectuate service of process within the time limitations set by statute. He further failed to abide by the conditions imposed by the Circuit Court of the State of Oregon for the County of Multnomah regarding the return of service of said Summons;

"(2)   He failed to communicate with his client;

"(3)   He failed to proceed effectively prior to the time limit set by the Statute of Limitations with reference to his client's cause of action.

*  *  *

"Said conduct * * * was * * * in direct contravention of * * * DR 6-101(A)(3); DR 7-101 and DR 7-102(A)(5)."

The portions of the Disciplinary Rules which the Oregon State Bar apparently relied upon as to the first cause of action are as follows:

"DR 6-101 Failing to Act Competently.

"(A) A lawyer shall not:

---

[2] The punitive damages in this case were awarded before our decision in *Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or 229, 237, 578 P2d 1225 (1978), wherein we held that negligence or recklessness is not, in and of itself, sufficient to support an award of punitive damages.

[3] We call attention to the fact the first cause alleges that Chambers was "negligent" in his representation of Hartel and that he was in violation of DR 6-101(A)(3) which provides that an attorney shall not "neglect" a legal matter entrusted to him. Although not an issue in this case we point out that "negligence" and "neglect" are not synonymous or interchangeable terms. A lawyer's neglect of a client's business does not necessarily give rise to actionable negligence.

"* * *

"(3) Neglect a legal matter entrusted to him.

"DR 7-101 Representing a Client Zealously.

"(A) A lawyer shall not intentionally:

"(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules * * *.

"(2) Fail to carry out a contract of employment entered into with a client for professional services, * * *.

"(3) Prejudice or damage his client during the course of the professional relationship, * * *.

"DR 7-102 Representing a Client within Bounds of the Law.

"(A) In his representation of a client, a lawyer shall not:

"(5) Knowingly make a false statement of law or fact."

The Trial Board found Chambers guilty of negligence in failing: (1) to properly prepare the summons in the case filed on behalf of Hartel, (2) to abide by the conditions imposed by the trial court regarding the return of service of the summons, and (3) to communicate with his client.

■ We agree with the Trial Board and find Chambers in direct violation of DR 6-101(A)(3) in that he neglected a legal matter entrusted to him. As to the first cause of complaint Chambers is not in violation of DR 7-101 or DR 7-102(A)(5) because those disciplinary rules concern "intentional" and "knowing" acts and only "negligent" acts are alleged in that cause.

The Trial Board found Chambers not guilty because of failure to prove the allegations that he negligently failed to: (1) effectuate service of process within the time limitations set by statute, and (2) proceed effectively prior to the time limit set by the statute of limitations with reference to his client's cause of action. We agree with the Trial Board, although maybe for a different reason. The Trial Board did not expand upon the reason for its finding. Because this matter is uncontested it is before us without the benefit of argument or briefs.

■ The only proof in this case to support the allegations that Chambers failed to "effectuate service of process" or "proceed effectively prior to the time limit set by

the Statute of Limitations" is the same evidence used to prove the allegations that Chambers failed "to properly prepare the summons" and "to abide by the conditions imposed by the Circuit Court." It seems to us that the allegations of failure to "effectuate service" and failure to "proceed effectively" are redundant when viewed with the other allegations in the cause. The summons was actually served before the expiration of the statute of limitations. Chamber's negligence was that he did not properly prepare the summons or amend the return. The fact that the summons was quashed and could not be served again because of the statute of limitations is the "result" of the negligence, and not the act of negligence. We agree with the Trial Board that Chambers is not guilty of these allegations.

■ In connection with the first cause of complaint the Trial Board also found that Chambers was guilty of:

> "Misrepresentation to the Court that the lawsuit had been settled between the parties when it, in fact, had not been, resulting in the case being dismissed by the Court."

The proof supports this finding, but the pleadings do not. The complaint contains no allegation that would put Chambers on notice that he was charged with this misrepresentation.

The second cause of complaint arises out of Chambers' representation of Charles Willhite in a criminal case. Willhite was charged with a crime as a result of a confrontation in 1977 between the Brothers Free and the Outsiders motorcycle clubs at a swap meet at the Memorial Coliseum in Portland. The record before us in this regard is scant — we have only 14 selected pages out of the 500 plus page transcript in the criminal case. We have the transcript of a subsequent post-conviction case entitled *Charles A. Willhite, Petitioner vs. Hoyt C. Cupp, Superintendent, Oregon State Penitentiary* together with the trial judge's decision and the judgment order. We do not have the exhibits in either case.

Willhite was indicted by the grand jury. A person by the name of Moore had been killed and a man by the name of Holland was wounded at the confrontation. The trial took four or five days and as far as we know Chambers

was the sole counsel for the defendant. Willhite was convicted of attempted murder.[4]

The post-conviction case was tried in July and August, 1979. The petition in that case is not a part of this record. The trial judge made the following findings of fact:

"Prior to the trial resulting in this petition, Mr. Chambers had been diagnosed a diabetic, resulting in his being 'tired' during the Court's instruction to the jury.

"I specifically find that his failure to request an instruction on use of physical force in self-defense was in error and not a part of his trial tactics.

"I further find that due to his ill health and exhaustion he was not paying attention to the details of the instruction and therefore, he took no exceptions to them."

As a part of his letter decision the trial judge recommended "that Mr. Chambers' ineffectiveness and conduct be considered by the Oregon State Bar."

As a conclusion of law the trial court found that Willhite "was not provided with reasonably effective representation and * * * was prejudiced thereby, * * *." The conviction was set aside and the case remanded to Multnomah County for a new trial.

The Oregon State Bar in its second cause of complaint charged that Chambers' representation of Willhite was not reasonable or effective in that:

"(1) The accused (Chambers) failed to properly investigate the facts of the case prior to trial;

"(2) The accused failed to properly prepare jury instructions and failed to request an instruction on the use of physical force and self-defense;

"(3) The accused failed to take exception to the instructions given at the time of trial;

"(4) The accused failed to consider his own physical condition in assessing his ability to zealously and adequately represent CHARLES WILLHITE."

The second cause concluded that the actions of Chambers were in direct contravention of DR 6-101(A)(1)(2)(3), and DR 7-101(A)(3), *supra,*

---

[4] The conviction was affirmed without opinion by the Court of Appeals. *State of Oregon v. Charles Allen Willhite,* 38 Or App 89, 589 P2d 1213, (affirmed without opinion 1/22/79).

"DR 6-101 Failing to Act Competently:
  "(A)  A lawyer shall not:
        "(1)  Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
        "(2)  Handle a legal matter without preparation adequate in the circumstances.
        "(3)  Neglect a legal matter entrusted to him."

■   The Trial Board found Chambers not guilty on the third and fourth specifications of the second cause of complaint because of a lack of proof. We agree. The instructions in the criminal case are not a part of the record so there is no way for us to know if Chambers should have taken an exception to any of them. The proof is not clear and convincing that Chambers failed to consider his own physical condition in his representation of Willhite or that his diabetic condition affected his ability to try the case to an extent that would have changed the result. The only evidence was that Chambers was tired during the later stages of the case and that on final argument he had to talk in a low voice.

The Trial Board found Chambers guilty of the first and second specifications of the second cause in direct violation of DR 6-101(A)(1)(2)(3) and DR 7-101(A)(3).

We agree with the Trial Board on the first specification that Chambers failed to properly investigate the facts of the case prior to trial. From reading the transcript in the post-conviction case one gets the distinct impression that Chambers prepared and tried the criminal case "by the seat of his pants." For example, he did not ask to see the evidence in the State's possession including the medical reports on the victims.[5]

On the second specification Chambers is guilty of failing to prepare an instruction on the use of physical force in defense of self or others.[6]

---

[5] According to the testimony of the former deputy district attorney of Multnomah County who tried the criminal case the medical reports would have shown the number of gunshot wounds and the angles at which the bullets entered the bodies. This information may have been important to a self-defense theory.

[6] This would have been a simple matter of requesting the trial court to give the Uniform Jury Instruction on the subject.

At the post-conviction trial Chambers testified as follows:

"Q. Was it not your position that Mr. Willhite was simply defending himself from the assault?

"A. That's correct.

"Q. And that Holland, who was shot and the bystander—the bystander who was shot were both in fact shot by Holland's gun?

"A. Correct.

"Q. You reviewed the transcript in the case?

"A. Yes.

"Q. You are aware that no instruction was given by the Court relating to the use of deadly force, protection of self or others?

"A. I am aware of that. I became aware of that about a month ago in your office.

"Q. Was that done for any tactical reason?

"A. No, it was not. * * * It would be my error in not bringing to the Court's attention the failure of such instruction."

We cannot find Chambers guilty of failure to prepare any other instructions because there is no evidence that it was necessary for him to prepare or request an instruction on any other particular subject.[7] For all we know from this record the trial judge may have given all of the other necessary instructions.

Under the first specification of the second cause Chambers is guilty of violating DR 6-101(A)(2) in that he handled a legal matter without preparation adequate in the circumstances.

Under that portion of the second specification of the second cause wherein Chambers failed to request an instruction on the use of physical force and self-defense he is in violation of DR 6-101(A)(3) in that he neglected a legal matter entrusted to him.

■  Chambers is not in violation of DR 6-101(A)(1). Although from reading the record one gets the impression that Chambers was "over his head," there is not sufficient

---

[7] Chambers submitted no instructions to the court. At the post-conviction trial he testified: "I am inclined not to submit instructions because I think juries do not listen to instructions."

evidence to find that he handled a legal matter which he should have known that he was not competent to handle without associating a competent lawyer. Nor is Chambers in violation of DR 7-101(A)(3) because there is no evidence that he *intentionally* prejudiced or damaged his client.

The third cause of action arises out of Chambers' representation of Delbert Marshall in connection with a collision between Marshall's vehicle and Nedra B. Thatcher's vehicle. At 2:00 o'clock in the morning of January 6, 1980 a van struck Thatcher's automobile which was parked in front of her residence. The driver of the van fled on foot.

The next event is described by Thatcher in her testimony before the Trial Board:

"It was about two days after the accident a man called, said his name was Don Chambers and he was the insurance agent for the owner of the van. And I asked him what company he worked for, he said he was an independent agent who worked out of his house. He gave me his telephone number and I gave him my insurance company's name, number and where the car was."

The next month after learning that Chambers was a lawyer and not an insurance agent Thatcher reported the above conversation to the Oregon State Bar. Chambers' allegedly false statement that he was an insurance agent to Thatcher then became the gravaman of the third cause of complaint. The Bar alleged that Chambers' conduct was in direct contravention of DR 7-102(A)(5).

The Trial Board found Chambers guilty of the third cause. We agree, though Chambers' motive does not appear to be clear and there is no apparent prejudice to Thatcher.

This is simply a question of judging the credibility of Thatcher's testimony.[8] She testified before the Trial Board:

---

[8] In a later telephone conversation Chambers denied to Thatcher that he had told her he was an insurance agent. Chambers also denied the statement to the attorney who investigated the matter for the Oregon State Bar. The investigator thought that Thatcher had simply misunderstood Chambers and recommended that no action be taken. We have to take into consideration the fact that Chambers has allowed this matter to go by default and the allegation in the complaint and the testimony of Thatcher are not contradicted. The third cause of complaint is the most important part of this case because it contains the only allegation involving moral turpitude.

"Q. Now, Mrs. Thatcher, are you absolutely certain he (Chambers) indicated he was an insurance agent?

"A. I am, absolutely."

In addition a note which Thatcher had written at the time of the conversation tended to corroborate her testimony. We find that Chambers is in violation of DR 7-102(A)(5) in that he knowingly made a false statement of fact.

Although Chambers is not before this court asking for consideration, we would be remiss if we did not mention his physical condition. There is non-medical evidence in the record that he has suffered from phlebitis and hypertension and was diagnosed in September, 1977 as being a diabetic. We find that this condition may help explain some of Chambers' conduct, although it cannot excuse it. We will consider this as evidence of mitigation in imposing the sanction.

We do not have to decide in this case whether or not "negligent" conduct which violates a disciplinary rule (first cause) or conduct which is "not reasonable or effective" and therefore violates a disciplinary rule (second cause) standing alone or together are sufficient to suspend an attorney from practice of law in the Oregon State Bar. In this case the "negligent" conduct and the "unreasonable" and "ineffective" conduct are coupled with an act of moral turpitude (third cause)—knowingly making a false statement of fact.

By way of summary: On the first cause we find Chambers guilty of negligence in failing: (1) to properly prepare the summons, (2) to comply with the conditions imposed by the trial court on the return of the summons, and (3) to communicate with his client. All three specifications are in violation of DR 6-101(A)(3). On the second cause we find that Chambers' representation was not reasonable or effective in that he failed to properly investigate the facts before trial and failed to request an instruction on the use of physical force and self-defense in violation of DR 6-101(A)(2)(3). On the third cause we find that Chambers is in violation of DR 7-102(A)(5) in that he knowingly made a false statement of fact to Thatcher when he represented that he was an insurance agent.

It is the order of this court that Donald W. Chambers be suspended from the practice of law in the State of Oregon for a period of two (2) years and thereafter, until he has made application for reinstatement and an affirmative showing, by evidence satisfactory to the Board of Governors and the Supreme Court, that he is, in all respects, again able and qualified, by good moral character and otherwise, to accept the obligations and faithfully perform the duties of an attorney in the State of Oregon, that he has the moral qualifications and general fitness required for admission to practice law in the State of Oregon, and that his resumption of the practice of law in the State of Oregon will be neither detrimental to the integrity and standing of the Bar or to the administration of justice, nor subversive of the public interest.

The Oregon State Bar is awarded costs.