## In re Complaint as to the Conduct of
## BARRY L. TAUB,
*Accused.*
### (SC S30621)
688 P2d 1332

Barry L. Taub, Eugene, argued the cause and filed the brief *pro se.*

Gretchen Miller, Eugene, argued the cause for Oregon State Bar. With her on the brief was Jill Heiman, Eugene.

PER CURIAM

## PER CURIAM

A complaint was filed in this disciplinary case alleging that the accused violated DR 1-102(A)(4) which provides:

"(A)   A lawyer shall not

"* * * * *

"(4)   Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

After conducting a hearing the Trial Board recommended that the complaint be dismissed. The Disciplinary Review Board concurred in the findings of fact of the Trial Board and also recommended the complaint be dismissed. We agree with the recommendation and dismiss the complaint.

This proceeding resulted from the accused's representation of Ms. Leah Johnson in a dissolution of marriage proceeding. At their initial meeting on June 4, 1981, Ms. Johnson paid the accused his fee in full. They discussed the preparation of a property settlement agreement which Ms. Johnson would have her husband sign before the dissolution petition would be filed. The property settlement agreement was signed five days later. Ms. Johnson and the accused then discussed the service of the dissolution petition on her husband. There is disagreement between the accused and Ms. Johnson about whether they discussed proceeding quickly with the dissolution and also a disagreement about how soon and where the accused told Ms. Johnson he would serve her husband. According to Ms. Johnson, she discovered some six to ten days after this meeting that her husband had not been served. She then agreed to have him served at work rather than at home, because she claims the accused told her the petition for dissolution had been filed but that her husband was avoiding service at his residence. Ms. Johnson discovered that the petition for dissolution was not filed until June 23 and that the documents bore the work address of the husband. The accused maintains that he did not represent to Ms. Johnson that the petition for dissolution had been filed before June 23, nor did he tell her that her husband was avoiding service. He contends that Ms. Johnson initiated the change of address for service herself. This case turns on this dispute of facts.

The Oregon State Bar asks this court to reject the

following findings of fact made by the Trial Board and concurred in by the Disciplinary Review Board.

### "FINDINGS OF FACT

"\* \* \* \* \*

"6.    Mrs. Johnson was inconsistent regarding the dates that conversations between herself and the Accused took place.

"7.    Mrs. Johnson was inconsistent as to whether Mr. Taub told her that something would happen by a particular date or whether it would occur within five (5) or seven (7) days.

"\* \* \* \* \*

"11.    There was insufficient evidence to establish that Mr. Taub represented to Mrs. Johnson that he had filed the petition before June 23, 1981, the date of actual filing.

"12.    There were no representations by Mr. Taub to Mrs. Johnson that any attempts had been made to serve the respondent in the dissolution case before June 23, 1981.

"13.    There were no representations by Mr. Taub to Mrs. Johnson before June 23, 1981, that service upon the respondent in the dissolution case had not been accomplished because the process server had not been able to find the respondent home."

To determine whether these findings are accurate we turn to the record to make our own independent review of the evidence. *In re Thomas,* 294 Or 505, 659 P2d 960 (1983).

We agree with findings 6 and 7 of the Trial Board. We are not convinced that the accused told Ms. Johnson that her husband would be served by a particular date or within a certain period of time. Ms. Johnson testified on direct examination that the accused indicated to her that he would file the dissolution petition "within another 5 to 7 days," that "about another week" went by before she found her husband had not been served, that "around the middle to the 20th of June" the accused told her her husband had not been served. On cross-examination by the accused, who was acting pro se, the following occurred.

"Q    What date was it that you allege that I told you that the petition was filed?

"A    That you told me?

"Q   Yes.

"A   You never told me, I checked with the courthouse and found out.

"Q   Are you saying that —

"A   You mean when it was actually filed?

"Q   No. In the complaint in this matter, Ms. Johnson, it's alleged that I told you on or about June 22nd 1981 that the petition had been filed, now, is that your testimony here?

"A   I don't remember the exact date it was filed. I know I found out through the courthouse —

"Q   Look I'm not asking you the exact date —

"A   — it was filed

"Q   — it was filed. What I'm asking you is what date I told you it was filed.

"A   I do not remember what date you told me it was filed —

"Q   Do you remember when —

"A   I don't remember you telling me it was filed.

"Q   never told you that it was filed?

"A   I do not remember that, I found out on my own, I don't remember you ever telling me that.

"Q   Have you read a copy of the complaint filed in this matter?

"A   Of my own?

"Q   No of the complaint filed by the Oregon State Bar. You see Mrs. Johnson the paragraph 5 on that complaint reads as follows:

> " 'On or about June 22, 1981 after Mrs. Johnson determined that her husband had still not been served with dissolution petition, the accused,' who was me, 'represented to his client that the petition had been filed and that several attempts to serve Mrs. Johnson's husband had been made.'

"What I want to know is, is that statement true? Did I tell you on June 22nd that this petition had been filed?

"A   Okay, because evidently I wrote at the time I was very clear on — it's been two years past, so if that's what I wrote —

"Q   That is not something you wrote, this was something that is —

"A   Well if this was taken from what I wrote is what I mean.

"Q   Well I want to ask you from — what I want to know is, as of your present memory — as of today, from what you can remember, from what happened —because you're only allowed to testify as far as what your memory is — is your memory that, on June 22nd I told you that the papers had been — the petition had been filed with the court and served?

"A   At this time I do not recall you saying that to me.

"Q   Do you know if I ever said that to you?

"A   I do not recall it, my main memory is finding out from the courthouse."

Ms. Johnson testified that she had contacted the courthouse a number of times to see if her husband had been served but was unable to give specific dates. She knew it was after the time had elapsed that the accused had indicated her husband would be served.

On redirect examination Ms. Johnson was unable to give dates when conversations occurred regarding changing the address for service. Specifically, she could not remember whether it was after June 16 or after June 22. Upon cross-examination she said she believed it was between June 16 and June 19, but upon being presented with the letter she wrote to the Oregon State Bar stating that the conversation took place after June 22 she said the letter was correct. We agree with findings 6 and 7 of the Trial Board.

Likewise, there is no credible evidence that the accused represented to Ms. Johnson that he had filed the dissolution petition before June 23 and that unsuccessful attempts had been made to serve her husband. Ms. Johnson's testimony indicates that she believed the accused deliberately misrepresented to her that he had filed the dissolution proceeding and that service was being attempted when, in fact, that was not the case. Her testimony was, however, inconsistent. The accused testified that he specifically told Ms. Johnson the case had not been filed before June 23. He also testified that he made no representation about when it would be filed or when it would be served. He testified that upon Ms. Johnson's suggestion to change the place of service from the husband's home address to his work address, he changed the

summons. The accused also testified that he received numerous calls from Ms. Johnson after June 23 inquiring whether the papers had been served and that she became very upset when there was some delay. We are in agreement with the Trial Board and Disciplinary Review Board that the evidence does not support that such representations were made.

Based upon the evidence in this record we conclude that the Bar has not carried its burden of presenting clear and convincing evidence that the accused made false representations to Ms. Johnson. *In re Chambers,* 292 Or 670, 672, 642 P2d 286 (1982).

The complaint is dismissed and costs are awarded to the accused.