Argued and submitted September 10, accused suspended for three years
December 6, 2001

In re Complaint as to the Conduct of
# L. BRITTON EADIE,
*Accused.*
(OSB 96-80, 97-105, 97-109, 97-114; SC S47751)
36 P3d 468

L. Britton Eadie, West Linn, argued the cause and filed the brief for himself.

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, De Muniz, and Balmer, Justices.*

PER CURIAM

---

* Riggs, J., did not participate in the consideration or decision of this case.

## PER CURIAM

In this lawyer discipline proceeding, the Oregon State Bar (Bar) charged the accused with statutory violations and multiple violations of the Code of Professional Responsibility in connection with his representation of several clients: Disciplinary Rule (DR) 1-102(A)(3) (dishonesty and misrepresentation); DR 1-102(A)(4) (conduct prejudicial to administration of justice); DR 6-101(A) (incompetence); DR 6-101(B) (neglect of client matter); DR 7-102(A)(5) (false statement during representation); DR 7-106(C)(1) (alluding to inadmissible evidence); DR 7-106(C)(7) (intentionally or habitually violating rules of procedure or evidence); DR 7-110(B) (*ex parte* communications); ORS 9.460(2) (misleading statements); and ORS 9.527(4) (willful deceit or misconduct). A trial panel of the Disciplinary Board concluded that the accused had violated DR 1-102(A)(3), DR 1-102(A)(4), DR 6-101(A), DR 7-102(A)(5), DR 7-106(C)(7), and ORS 9.460(2), and recommended that the accused be disbarred. Our review is automatic. BR 10.1. On *de novo* review, BR 10.6, we find that the accused violated DR 1-102(A)(3), DR 1-102(A)(4), DR 6-101(A), DR 7-102(A)(5), DR 7-106(C)(1), and DR 7-106(C)(7). We conclude that a three-year suspension from the practice of law is the appropriate sanction.

## I. FACTS AND TRIAL PANEL FINDINGS

The Bar has the burden of establishing misconduct by clear and convincing evidence. BR 5.2. "Clear and convincing evidence" means evidence establishing that the truth of the facts asserted is highly probable. *In re Johnson,* 300 Or 52, 55, 707 P2d 573 (1985). We find proof of the following facts by clear and convincing evidence.

### A. *Burke Matter*

The accused represented Shon in a dispute with her neighbor, Burke, regarding an easement. On January 31, 1995, the accused filed a complaint seeking to terminate Burke's easement over Shon's property. The complaint also sought costs and disbursements. Burke did not retain a lawyer to represent her, and the parties thereafter negotiated a settlement agreement. The agreement provided that Shon

would dismiss the complaint in return for Burke's promises to execute and return a quitclaim deed, and to remove structures and debris from the property. Burke did not file an answer to the complaint.

On March 8, 1995, in response to a letter that Burke had written to the accused about the settlement, the accused wrote a letter to Burke summarizing the terms of the settlement and concluding:

> "The easement is terminated as indicated in your letter. *The complaint will be dismissed when the properly executed quit-claim deed is returned and recorded, as indicated above.*"

(Emphasis added.)

Burke executed and returned the quitclaim deed, and fulfilled her other duties under the settlement agreement. The accused thereafter submitted a proposed form of judgment to the trial court, with a copy to Burke, that included an award of costs to Shon. In his cover letter, the accused informed the court that he was seeking a prevailing-party fee. The trial court returned the proposed judgment to the accused, explaining that, unless stipulated, Shon was not a prevailing party and that she therefore was not eligible to recover costs. Burke also wrote a letter to the accused stating that she "d[id] not agree to pay [Shon's] costs and disbursements."

The accused thereafter attempted to recover costs by applying to the trial court for a default judgment against Burke, alleging that Burke had "failed to answer or appear" and not mentioning the settlement agreement. The accused did not serve a copy of the application on Burke. The court entered the default judgment, which included an award of costs. Burke became aware of the entry of the default judgment only after the accused demanded payment under the judgment.

Burke moved to set aside the default judgment on the basis of "fraud, misrepresentation, or other misconduct." ORCP 71 B(1)(c). The trial court denied the motion.

In its cause of complaint relating to the Burke matter, the Bar charged the accused with violating DR 1-102(A)(3), DR 1-104(A)(4), and DR 7-110(B). The Bar maintained that the accused made a misrepresentation and engaged in prejudicial conduct when he reached an agreement with Burke that did not mention costs, then later attempted to improve on the settlement by filing a judgment of dismissal that included an award of costs. The Bar also alleged that the accused engaged in a written communication with the court on the merits of an adversary proceeding without delivering a copy to the opposing party when he submitted the proposed default judgment to the court without serving a copy on Burke.

The trial panel concluded, apparently on grounds of issue preclusion, that the trial court's denial of Burke's motion to set aside the default judgment under ORCP 71 B(1)(c) precluded the trial panel from finding a disciplinary violation. The trial panel also found that, because Burke had not filed an answer to Shon's complaint, she "had not filed an appearance in the litigation that would have entitled her to notice" from the accused regarding the accused's application for a default judgment. Accordingly, the trial panel concluded that the accused had not violated DR 1-102(A)(3), DR 1-102(A)(4), or 7-110(B) as charged.

B. *Collins Matter*

In 1996, the accused represented Collins in a personal injury action against Harbertson, the driver of a car that allegedly had struck Collins. Safeco, Harbertson's insurer, retained lawyers Brisbee, Mead, and Johnston to represent Harbertson.

After the accused had filed a complaint against Harbertson, the trial judge set pretrial conference and trial dates. Harbertson's lawyers thereafter moved to strike portions of the complaint. After successfully arguing the motion to strike, Mead gave the accused a proposed order for submission to the judge. The accused objected to the proposed order and added:

"My notes indicate that [the judge] specifically stated that this matter would be put back on the trial docket, I

think he intended that it would be scheduled for trial earlier than May 1996? An order to that effect would be appropriate." (Question mark in original.)

The accused then submitted a proposed order to the judge, rescheduling the pretrial conference and trial dates. In a letter accompanying the proposed order, the accused stated:

"I believe that this proposed form of order accurately reflects your findings and rulings on defendants' motion and *your intent as to rescheduling the pre-trial and trial dates in this case.*"

(Emphasis added.) After the judge signed the accused's proposed order, Brisbee reminded the judge that he had not discussed changing the pretrial conference and trial dates, and questioned whether the judge had contemplated doing so. The judge agreed with Brisbee and modified the order to delete the date changes that the accused had submitted to the judge.

In April 1996, Brisbee scheduled a hearing before a different judge on a motion to compel production. The day before the hearing, the accused, without serving Harbertson's lawyers, filed a written motion to disqualify that judge. Harbertson's lawyers did not learn about the accused's motion until they appeared before the judge, who sent them to a courtroom where a different judge was presiding. When they arrived at that courtroom, however, the accused announced that he planned to file an affidavit of prejudice against that judge as well. After a period of delay, a third judge heard the defense motion to compel production.

Several months later, on October 6, 1996, a judge in the Collins litigation imposed a sanction on the accused for filing a meritless discovery motion. Ten days later, on October 16, 1996, the accused served a subpoena *duces tecum* on a Safeco employee to produce Safeco's file on the Collins/Harbertson accident by October 24, 1996. Brisbee told Johnston to file a motion to quash the subpoena. Because the accused's subpoena required production in only eight days, Johnston acted quickly. On October 16, the day that the accused served the subpoena, Johnston called the accused and left a telephone voice message, stating that she wanted to discuss her intent to file a motion to quash and that, if she

did not hear from him, she would appear in court *ex parte* on October 18, 1996, to request an expedited hearing on the motion. Johnston's secretary also telephoned the accused and told him of Johnston's plan. In response to that information, the accused told the secretary, among other things, "I object," and hung up. Later, Johnston's secretary attempted to send the accused a facsimile copy of the motion to quash, but the facsimile would not go through, and no one answered the telephone at the accused's office. Johnston then told her law clerk, Morrow, to deliver a copy of the motion to the accused's office. Morrow went to the accused's office on the evening of October 17, 1996. Morrow saw the accused through a glass door and told him that he had documents to deliver. The accused would not open the door, so Morrow told the accused that he was leaving the documents and placed them in the door jamb while the accused watched.[1]

On October 18, 1996, Johnston appeared in court and received a date for the hearing on the motion to quash. The accused did not appear. Johnston then sent the accused a facsimile letter stating the date and time for the hearing. The accused responded by writing a letter that accused Brisbee and Johnston of "judge shopping," and stated that the accused neither had been served with the motion to quash nor had been advised that Johnston planned to appear in court to request a hearing date on the motion. The accused sent copies of that letter to two Washington County judges. At a hearing on October 22, 1996, the accused told the judge: "[T]hey didn't even attempt to confer with me. There was no one that made any effort to communicate with me in my office in any way whatsoever."

The case of *Collins v. Harbertson* eventually was tried to a jury, which returned a defense verdict. The court thereafter imposed sanctions on the accused for failing to obey discovery orders.

In its causes of complaint relating to the Collins matter, the Bar alleged that the accused had violated DR 1-102(A)(3), DR 1-102(A)(4), DR 7-102(A)(5), ORS 9.460(2), and

---

[1] The accused admitted that he had heard pounding on his office door that evening and had seen someone outside, but he denied that he had seen Morrow deliver anything or that he had found documents left in the door jamb.

ORS 9.527(4) by seeking to have the judge change the pretrial conference and trial dates. The Bar alleged that the accused had violated DR 1-102(A)(3), DR 1-102(A)(4), DR 7-102(A)(5), ORS 9.460(2), and ORS 9.527(4) by telling several judges that opposing counsel had made no effort to notify him of Johnston's *ex parte* court appearance. Finally, the Bar alleged that the accused had violated DR 7-106(C)(7) and DR 7-110(B) by failing to serve the written motion to disqualify the trial judge on Harbertson's lawyers. According to the Bar, an established rule of procedure required him to do so.

The trial panel found that the accused had violated DR 1-102(A)(3), DR 1-102(A)(4), and ORS 9.460 by misrepresenting to the court his intentions regarding scheduling in *Collins v. Harbertson*. However, the trial panel held that the accused did not violate ORS 9.527(4) or DR 7-110(B).[2]

The trial panel also found that it could not determine whether the accused had received the telephone messages from Johnston or her secretary, or Johnston's facsimile about the hearing on scheduling the defense motion to quash. However, the trial panel accepted Morrow's testimony that Morrow had delivered the papers, and it specifically refused to credit the accused's testimony on that point. The trial panel found that the accused violated DR 1-102(A)(3) and DR 1-102(A)(4).[3]

## C. *Cassady Matter*

The accused represented Cassady against Huber in a personal injury action in which the sole issue was damages. During jury selection in the case, the accused improperly mentioned Huber's insurance coverage. *See* OEC 411 (limiting admissibility of evidence concerning liability insurance);

---

[2] The trial panel stated that the accused had not violated DR 7-102(A)(5) when he failed to serve opposing counsel with the motion to disqualify the trial judge. However, it is clear from the trial panel's opinion that it meant to state that the accused had not violated DR 7-110(B).

The trial panel did not address the Bar's allegation that the accused also had violated DR 7-102(A)(5) by knowingly making a false statement of law or fact in the Collins matter.

[3] The trial panel did not address the Bar's allegation that the accused had violated DR 7-106(C)(7) by intentionally or habitually violating rules of procedure or evidence in his handling of the Collins matter, and the Bar has abandoned that issue on review.

*Johnson v. Hansen*, 237 Or 1, 4, 389 P2d 330 (1964) (unnecessary injection of insurance information prejudicial). Although the jury selection proceedings were not transcribed, the judge who presided over the trial testified at the disciplinary hearing that, when a potential juror raised the issue of insurance, the accused responded that there was plenty of insurance to go around and that the jury should not worry about it. During trial, the accused again raised the issue of Huber's insurance coverage, contrary to the judge's repeated admonitions not to do so.

During the course of the trial in *Cassady v. Huber*, the accused did not appear to be prepared for trial and was either unfamiliar with or unwilling to comply with the rules of evidence. For example, during his direct examination of a physician that the accused had called as an expert on Cassady's behalf, he handed the witness a stack of medical bills that the witness had not seen previously and asked him whether the bills were reasonable and necessary. It also became evident during the trial that the accused had failed to order a copy of the transcript of Cassady's deposition. Accordingly, he was unprepared when defense counsel used that deposition transcript at trial to impeach Cassady.

The accused also ignored the trial court's evidentiary rulings. For example, the accused repeatedly attempted to introduce hearsay, despite the trial court's repeated rulings that those reports and opinions were inadmissible. Moreover, during his direct examination of Cassady's treating physician, the accused asked the physician questions about which the physician had no personal knowledge and then ignored the court's rulings about those questions.

The jury began its deliberations in *Cassady v. Huber* late on the second day of trial. According to the trial judge, the case could have been tried more quickly if the accused had been prepared and competent. The jury awarded Cassady compensatory damages.

Huber promptly paid the amount that she owed under the judgment, and the accused accepted satisfaction of the judgment on Cassady's behalf. Thereafter, the accused filed a motion for a new trial. Huber opposed the motion, arguing that there was no legal basis for the motion and

requesting sanctions against the accused for having filed it. *See Nickerson and Nickerson*, 296 Or 516, 520, 678 P2d 730 (1984) (party cannot accept benefits of judgment and also pursue course that might overthrow right to benefits). The court set a hearing date on the motion for a new trial and notified the accused of that date. The accused failed to appear despite the court's efforts to contact him. The court held the accused in contempt and, in its contempt order, noted that the accused's affidavit accompanying his motion for a new trial was "full of inaccuracies."[4] The court also denied Cassady's motion for a new trial. Following a subsequent hearing on the defense motion for sanctions against the accused for having filed the motion for a new trial, the trial court imposed sanctions on the accused for filing the baseless motion for a new trial and for making false statements in the affidavit that accompanied the motion.[5]

In its cause of complaint relating to the Cassady matter, the Bar charged the accused with violating DR 6-101(A), DR 6-101(B), DR 7-106(C)(1), and DR 7-106(C)(7).[6]

The trial panel concluded that the accused had failed to represent Cassady competently, in violation of DR 6-101(A), and that he intentionally or habitually had violated procedural and evidentiary rules, in violation of DR 7-106(C)(7). However, the trial panel concluded that the Bar had not shown that the accused had neglected a legal matter in representing Cassady, in violation of DR 6-101(B), or that he had alluded to inadmissible evidence, in violation of DR 7-106(C)(1).[7]

---

[4] The court eventually vacated the contempt order so that the matter could be heard by another judge. The record does not reveal the outcome.

[5] The court thereafter vacated that order for lack of jurisdiction, because the accused already had filed an appeal from the order denying his motion for a new trial.

[6] Although the Bar's cause of complaint alleged that the accused had made misleading statements to the court and in affidavits in connection with a discovery dispute over a photograph of Cassady's damaged car that fell out of the accused's file during the trial, the Bar did not charge the accused with violating DR 7-102(A)(5) or ORS 9.460. Nonetheless, as we note below, the trial panel concluded that the accused violated DR 7-102(A)(5) and ORS 9.460 by making misleading statements regarding the photograph. The Bar does not ask this court to hold that the accused violated any disciplinary rules in connection with the photograph incident at Cassady's trial.

[7] The trial panel also concluded that the accused had violated DR 7-102(A)(5) and ORS 9.460 in the Cassady matter, even though the Bar did not charge those

## D. *Martin Matter*

The accused represented Martin in a personal injury case for injuries that she received when a kitchen cabinet in her apartment fell on her. The complaint that the accused filed on Martin's behalf named many defendants, including various subcontractors and others, some of whom later provided evidence that they should not have been named as defendants.

Several of the defendants named in the complaint filed motions for summary judgment, and the accused delegated responsibility for opposing those motions to a new associate in his office, Gresham. Gresham had minimal legal experience and never before had opposed a motion for summary judgment. The accused was aware of Gresham's inexperience, but he assigned the matter to Gresham nonetheless.

To respond to each defendant's motion for summary judgment, Gresham needed to submit documents or affidavits on Martin's behalf that would show the court that there was a genuine issue of material fact requiring a trial. ORCP 47 C. Rather than doing so, Gresham opposed the motions orally, relying solely on legal arguments. The trial court granted the defense motions, then stated:

> "I will be fairly blunt. I suspect that at least half the motions I just granted could have been overcome by appropriate documents had they been filed. Without their being filed, I can't do the right thing. I have to do the legally required thing * * *."

Thereafter, the trial court imposed sanctions on the accused for failing to investigate information suggesting that claims against several of the defendants whom he had named in the complaint should have been dismissed. *See* ORCP 17 C (authorizing imposition of sanctions against lawyers who file pleadings not based on lawyer's "reasonable knowledge, information and belief, formed after the making of such

violations in its complaint. The Bar does not argue those violations on review. In addition, on review, the Bar has abandoned its charge of neglect under DR 6-101(B) in the Cassady matter.

inquiry as is reasonable under the circumstances"). According to the court, the accused's conduct was "the most egregious set of circumstances I have ever seen."

In its cause of complaint relating to the Martin matter, the Bar charged the accused with violating DR 6-101(A) and DR 6-101(B). The trial panel concluded that the accused did not represent Martin competently, in violation of DR 6-101(A). However, the trial panel concluded that the Bar had not shown that the accused had neglected a legal matter entrusted to him, and it therefore dismissed the charge under DR 6-101(B).

E. *Trial Panel Sanction Determination*

The trial panel concluded that, in view of the prior disciplinary record and the ethical violations found by the trial panel arising out of four separate cases, and involving numerous and factually separate circumstances, "disbarment is the only way to protect the public and the integrity of the profession."

## II. ISSUES ON REVIEW

A. *Burke Matter*

1. DR 1-102(A)(3)

It is professional misconduct for a lawyer to "[e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." DR 1-102(A)(3). To violate the rule, an accused's misrepresentations, whether direct or by omission, must be knowing, false, and material in the sense that the misrepresentations would or could significantly influence the hearer's decision-making process. *See In re Kluge*, 332 Or 251, 255, 19 P3d 938 (2001) (so stating).

As a threshold matter, we address whether the trial court's denial of Burke's motion to set aside the default judgment under ORCP 71 B(1)(c) precluded the trial panel from holding that the accused had violated DR 1-102(A)(3). Although there may be circumstances in which the doctrine of issue preclusion would prevent consideration of a claim that a lawyer had violated a disciplinary rule, issue preclusion plays no role here. Issue preclusion requires, among

other things, that the party sought to be precluded was a party (or was in privity with a party) to the prior proceeding and that the party sought to be precluded had a full and fair opportunity to be heard on that issue. *See Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (setting out elements of issue preclusion). The Bar neither was a party nor was in privity with a party in *Shon v. Burke*. Even assuming that the terms "fraud, misrepresentation, or other misconduct" under ORCP 71 B(1)(c) mean the same as "dishonesty, fraud, deceit, or misrepresentation" under DR 1-102(A)(3), the Bar did not have a full and fair opportunity to be heard in the hearing on Burke's motion under ORCP 71 B(1)(c) to set aside the default judgment. The trial panel was not constrained by principles of issue preclusion from finding that the accused intentionally had misrepresented the question of payment of court costs in his settlement letter to Burke and that Burke had relied on the omission to her detriment.

We turn to the merits on this issue. The Bar contends that the accused violated DR 1-102(A)(3) and DR 1-102(A)(4) by making a misrepresentation by omission to Burke in the settlement agreement and by applying for a default judgment that included costs after he had told Burke that he would dismiss the complaint once she had complied with the terms of the settlement agreement. The accused contends that his conduct was not unethical.

■ We find that the accused intentionally omitted from the settlement agreement his intent to seek costs. The complaint that the accused filed in *Shon v. Burke* made clear that the accused sought costs. However, Burke objected to paying costs. Burke's objection indicates that, to her, the matter of costs was an important element of the settlement. The settlement agreement that the accused sent to Burke made no mention of costs, leading Burke to believe that the settlement did not include them. The accused intentionally failed to disclose a material fact—namely, that he intended to seek costs—to obtain Burke's acquiescence to settle her dispute with Shon. The accused violated DR 1-102(A)(3).

■ We turn to the accused's submission of a default judgment to the court that contained an award of costs to

Shon after the parties had settled the case. As we have explained, the accused concealed his intent to recover costs against Burke by not including them in the settlement agreement. After Burke had agreed to the settlement and had complied with its terms, she was entitled to believe that the matter was resolved and that the accused would dismiss the action. The accused did not inform Burke that he intended to seek a default judgment notwithstanding the settlement. The accused's failure to correct a false impression created by nondisclosure of a material fact—that the settlement agreement did not resolve completely the case of *Shon v. Burke*—was a misrepresentation under DR 1-102(A)(3).

### 2. DR 1-102(A)(4)

It is professional misconduct for a lawyer to "[e]ngage in conduct that is prejudicial to the administration of justice." DR 1-102(A)(4). To establish a violation of that rule, the Bar must show: (1) that the accused lawyer engaged in "conduct" by doing something that the lawyer should not have done or by failing to do something that the lawyer was supposed to do; (2) that the conduct occurred during the course of a judicial proceeding or another proceeding that has the trappings of a judicial proceeding; and (3) that the conduct was prejudicial because it involved several acts that caused some harm to the administration of justice or because it involved a single act that caused substantial harm to the administration of justice. *In re Gustafson*, 327 Or 636, 643, 968 P2d 367 (1998).

The Bar argues that the accused violated DR 1-102(A)(4) by applying for a default judgment for costs against Burke, contrary to the settlement agreement that called for dismissal of Shon's action against Burke, and by failing to give Burke notice, under ORCP 69 A(1), of his intent to apply for a default judgment. The Bar contends that Burke's "substantive interests were substantially and adversely affected by the Accused's conduct."

As we have explained above, to establish a violation of DR 1-102(A)(4), the Bar must satisfy all three prongs of the test summarized in *Gustafson*. Here, the Bar has not demonstrated that the accused's conduct in applying for the default judgment was an act that caused substantial harm to

the administration of justice. To the extent that the Bar makes an argument regarding the "prejudice" prong of that test in this matter, it focuses solely on prejudice to Burke, not on prejudice to the administration of justice. The Bar has not met its burden of proving that the accused violated DR 1-102(A)(4).

### 3. DR 7-110(B)

■ Unless otherwise authorized by law, it is professional misconduct for a lawyer to communicate in writing on the merits with a judge or an official before whom the proceeding is pending unless the lawyer "promptly delivers a copy of the writing to opposing counsel or to the adverse party if the adverse party is not represented by a lawyer." DR 7-110(B)(2). This court has construed the term "on the merits" in that rule to include procedural as well as substantive matters. *In re Schenck*, 320 Or 94, 103, 879 P2d 863 (1994).

The Bar contends that the accused violated DR 7-110(B) by failing to notify Burke of his intent to apply for a default judgment. The accused responds that he was not required to provide Burke with notice because he was "authorized by law" under ORCP 69 A(1) not to do so.

ORCP 69 A(1) requires a party seeking a default judgment to provide the opposing party with written notice at least ten days prior to the entry of the order of default

> "[i]f the party against whom an order of default is sought *has filed an appearance in the action, or has provided written notice of intent to file an appearance to the party seeking an order of default*[.]"

(Emphasis added.) It is undisputed that Burke did not file an answer to Shon's complaint and sought instead to settle the case. The Bar contends that, by informing the accused before the settlement that she objected to paying his costs, Burke triggered the ten-day notice requirement in ORCP 69 A(1). The Bar relies on *Morrow Co. Sch. Dist. v. Oreg. Land and Water Co.*, 78 Or App 296, 300 n 4, 716 P2d 766 (1986), for the proposition that "almost anything that indicates that a party is interested in the case will suffice" to trigger the ten-day notice requirement in ORCP 69 A(1).

The Bar reads too much into that statement in *Morrow*. By its terms, ORCP 69 A(1) requires notice to an opposing party only if the party has filed an appearance or provided written notice of an intent to file an appearance. The legal meaning of the word "appearance" is "[a] coming into court as a party" or "[a] formal proceeding by which a defendant submits himself to the jurisdiction of the court." *Black's Law Dictionary*, 97 (6th ed 1990). Burke's letter to the accused stating that she was opposed to paying costs was not an "appearance" as that term is used in ORCP 69 A(1). The accused was not required to serve Burke with notice that he intended to apply for a default judgment. *See* ORCP 9 A (no service required on parties in default for failure to appear). Because an exception to the general rule requiring notice was "authorized by law," the accused did not violate DR 7-110(B).

B. *Collins Matter*

1. DR 1-102(A)(3) and DR 7-102(A)(5)

As we have discussed above, a lawyer commits professional misconduct by knowingly engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. DR 1-102(A)(3). The misrepresentation must be material. Moreover, in representing a client or the lawyer's own interests, the lawyer shall not "[k]nowingly make a false statement of law or fact." DR 7-102(A)(5).

The Bar contends that the accused knowingly caused the trial judge in the Collins matter to sign an order containing a provision that the judge had not considered regarding the pretrial and trial dates in *Collins v. Harbertson*. The accused does not respond.

At the trial panel hearing, the accused testified that he recalled hearing the judge mention that he wished to change the pretrial conference and trial dates in *Collins v. Harbertson*. Harberton's lawyers testified that the judge had made no such statement. Assessing the witnesses' testimony, which was the only evidence regarding those charges, we agree with the trial panel that the accused knowingly misrepresented the judge's intent regarding the scheduling of *Collins v. Harbertson*. The misrepresentation was material in that it affected the judge's decision-making process about

the scheduling of the trial. The accused violated DR-102(A)(3) and DR 7-102(A)(5).

■ We agree with the trial panel's finding that the accused made a knowing misrepresentation to two Washington County judges when he stated that Johnston and Brisbee had made no effort to notify him before filing the motion to quash the accused's subpoena. Even assuming that the accused did not receive either Johnston's voice mail message or the facsimile, the record nonetheless establishes that Johnston and Brisbee attempted to consult with the accused through Morrow, and that the accused's contrary assertion was a knowing misrepresentation in violation of DR 1-102(A)(3) and DR 7-102(A)(5).

 2. DR 1-102(A)(4)

■ Our finding that the accused made misrepresentations in violation of DR 1-102(A)(3) establishes that the accused did something that he was not supposed to do, thus satisfying the first prong of the three-pronged test for finding a violation of DR 1-102(A)(4), described earlier in this opinion. *See Gustafson*, 327 Or at 643 (summarizing three-pronged test). The accused's conduct occurred during the course of a judicial proceeding in the case of *Collins v. Harbertson*, thereby satisfying the second prong. The proposed order that the accused submitted to the judge changing the pretrial and trial dates contained a misrepresentation that was calculated to induce the judge to acquiesce to a trial date that the accused preferred. Changing the trial date substantially harmed the administration of justice, satisfying the third—or prejudice—prong. The accused's misrepresentation made it necessary for the judge to resolve the dispute that arose as a result of the accused's misrepresentation and to redraft his order. *See In re Meyer (I)*, 328 Or 211, 214, 970 P2d 652 (1999) (harm under DR 1-102(A)(4) can occur when procedural functioning of a case or hearing is impaired; harm may be actual or potential). The accused violated DR 1-102(A)(4).

### 3. DR 7-110(B)

As previously noted, DR 7-110(B) provides that, unless otherwise authorized by law, it is professional misconduct for a lawyer to communicate in writing on the merits with a judge or an official before whom the proceeding is pending unless the lawyer "promptly delivers a copy of the writing to opposing counsel or to the adverse party if the adverse party is not represented by a lawyer."

The Bar contends that the accused violated that rule by failing to serve opposing counsel with his written motion to disqualify the trial judge. The motion was "on the merits" in *Collins v. Harbertson*. The accused does not dispute that he filed a written motion on the merits. However, he contends that he filed his motion to disqualify under ORS 14.270[8] and that nothing in that statute requires service "upon anyone or any entity other than the court."

The accused's reliance on ORS 14.270 is misplaced. That statute provides that, under certain circumstances, notice to the court may be oral. The statute creates no exception to the general rule regarding service of a written motion on opposing counsel. *See* ORCP 9 A (unless excepted by rule, "every written motion * * * shall be served upon each of the parties"). The accused violated DR 7-110(B) by failing to

---

[8] ORS 14.270 provides:

"An affidavit and *motion for change of judge* to hear the motions and demurrers or to try the case shall be made at the time of the assignment of the case to a judge for trial or for hearing upon a motion or demurrer. *Oral notice of the intention to file the motion and affidavit shall be sufficient compliance with this section providing that the motion and affidavit are filed not later than the close of the next judicial day*. No motion to disqualify a judge to whom a case has been assigned for trial shall be made after the judge has ruled upon any petition, demurrer or motion other than a motion to extend time in the cause, matter or proceeding; except that when a presiding judge assigns to the presiding judge any cause, matter or proceeding in which the presiding judge has previously ruled upon any such petition, motion or demurrer, any party or attorney appearing in the cause, matter or proceeding may move to disqualify the judge after assignment of the case and prior to any ruling on any such petition, motion or demurrer heard after such assignment. No party or attorney shall be permitted to make more than two applications in any action or proceeding under this section."

(Emphasis added.)

serve notice of the written motion to disqualify on opposing counsel.[9]

## C. *The Cassady Matter*

### 1. DR 6-101(A)

A lawyer must provide "competent representation to a client," which requires "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." DR 6-101(A). This court has held that determining whether a lawyer acted incompetently, in violation of that rule, is a fact-specific inquiry:

> "The question whether a lawyer has competently represented a client is, of course, a fact-specific inquiry. A review of this court's cases shows that incompetence often is found where there is a lack of basic knowledge or preparation, or a combination of those factors.
>
> "In contrast, lawyers have been found not guilty of providing incompetent representation where the lawyers showed experience and professional ability to perform work, or where the Bar failed to prove that a position taken by the lawyer was 'advanced in pretense or bad faith, or in culpable ignorance.' In sum, competence or incompetence can best be measured on a case-by-case basis using the standard stated in DR 6-101(A) itself."

*In re Gastineau*, 317 Or 545, 553-54, 857 P2d 136 (1993) (footnote and citations omitted).

In its cause of complaint, the Bar alleged that the accused failed to represent Cassady competently at trial. The Bar identifies many deficiencies in the accused's performance, ranging from repeatedly asking witnesses questions about which they had no knowledge and asking witnesses to give opinions about reports that were not in evidence, to his inability to authenticate or establish proper foundations for evidence. The accused responds that Greene "did not offer

---

[9] We decline to address the Bar's charges under ORS 9.460(2) and ORS 9.527(4), because they are redundant of its charges under DR 1-102(A)(3) and DR 7-102(A)(5), and the Bar does not argue that a finding that the accused had violated those statutes would enhance or otherwise affect the sanction. *See In re Kimmell*, 332 Or 480, 487, 31 P3d 414 (2001) (illustrating point); *In re Lawrence*, 332 Or 502, 511, 31 P3d 1078 (2001) (same).

any specific basis * * * as to whether the accused had performed his duties in a competent manner in the Cassady trial."

Our review of the record substantiates the Bar's contention that the accused did not represent Cassady competently at trial. Several examples demonstrate the accused's lack of legal knowledge, skill, or preparation. First, the accused repeatedly attempted to inject the issue of Huber's insurance at the trial. The trial judge admonished the accused many times not to mention insurance. Nonetheless, the accused continued to do so. The accused persists in his belief that the jury was entitled to hear evidence about Huber's insurance coverage and that the evidence would have been admissible had it not been for the judge's bias against the accused.

Second, the accused was not prepared for trial. The Bar's expert witness, Greene, testified that it is "absolutely essential" for a lawyer to have a copy of the client's deposition transcript at trial so that the client does not mistakenly make statements inconsistent with the client's prior testimony. The accused did not order a copy of Cassady's deposition transcript for use at trial. In addition, the accused failed to show Cassady's medical bills to his own medical expert before trial, causing the expert to be unprepared to testify at trial.

Third, during the trial, the accused attempted to show the jury through the testimony of Cassady's treating physician that Cassady had a good work ethic, even though the physician had no knowledge of her work ethic. The accused appeared to be oblivious to that problem.

Fourth, the accused repeatedly posed questions to witnesses seeking hearsay or other incompetent evidence, a practice that he continued even after the trial judge had ruled the evidence inadmissible. Fifth, the accused made multiple unfounded objections during the trial. Finally, the accused moved for a new trial after accepting satisfaction of judgment on Cassady's behalf, despite the long-established rule that a party cannot move for a new trial after accepting the benefits of a judgment in its favor. *See Snipes v. Beezley*, 5 Or 420, 422 (1875) (too late to move for new trial after receiving payment on judgment). The accused's conduct at

Cassady's trial reveals a lack of understanding of basic legal concepts concerning the conduct of a trial and the consequences of accepting satisfaction of a judgment.

Both the trial judge in the Cassady trial and Greene testified that the accused had performed incompetently in the Cassady trial. According to the judge, "in 14 years, it was the worst presentation by an attorney I've ever seen." On *de novo* review, we find that the accused performed incompetently in his representation of Cassady at trial. The accused violated DR 6-101(A).

2. DR 7-106(C)(1) and DR 7-106(C)(7)

In appearing in the lawyer's professional capacity before a tribunal, a lawyer shall not "[s]tate or allude to any matter that the lawyer has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence," DR 7-106(C)(1), or "[i]ntentionally or habitually violate any established rule of procedure or of evidence," DR 7-106(C)(7).

The Bar contends that, in the Cassady matter, the accused violated both those rules by referring to Huber's insurance coverage during *voir dire* and during the trial itself after the judge had admonished him not to do so. The accused acknowledges that he made several references to insurance but apparently believes that he was entitled to do so.

Greene testified that the rules do not allow a lawyer to discuss insurance during *voir dire* in a personal injury case and that the accused's repeated references to Huber's insurance could have caused a mistrial. Even without instruction from the court, the accused should have known that evidence of Huber's insurance was not admissible. However, in light of the judge's repeated warnings that the accused was not to mention insurance coverage, the accused had no reasonable basis for believing that he was entitled to do so.

The accused's reference to insurance was intentional. The accused had filed a motion *in limine* to prevent Huber's witnesses from mentioning any collateral sources of payment that Cassady might have received. That motion established that the accused understood that insurance could be a sensitive subject at trial. Although he had sought the

trial court's aid in preventing Huber's witnesses from referring to insurance payments that Cassady might have received, the accused nonetheless repeatedly attempted to inform the jury that Huber had insurance coverage. The accused violated DR 7-106(C)(1) and DR 7-106(C)(7).

### D. *Martin Matter*

#### 1. DR 6-101(A)

As discussed above, DR 6-101(A) requires a lawyer to represent clients competently. The Bar alleged that the accused had violated that rule by delegating Martin's response to the defense motions for summary judgment to Gresham and then failing to supervise Gresham adequately. The accused responds that he provided what he believed to be reasonable supervision of Gresham, but he faults Gresham for failing to confer with the accused on important matters. The accused also contends that Gresham's testimony that the accused did not give him any guidance in preparing to oppose the summary judgment motions was biased, that Gresham obviously had been coached by the Bar regarding his testimony, and that time records should clearly demonstrate Gresham's failure to confer with the accused on important matters.

Before the trial panel, Gresham testified that, when the accused assigned him to oppose the defense motions for summary judgment in the Martin case, Gresham had had no experience in handling such matters and that he had received no guidance from the accused. In his deposition, the accused stated that he had not conferred with Gresham about how to oppose the motions for summary judgment and that, when the accused learned that Gresham had not filed the documents required to create material issues of fact, the accused, like everyone else in his office with whom he spoke about the matter, was appalled. Before the trial panel, by contrast, the accused testified that he thought he had supervised Gresham adequately. As noted, the accused contends before this court that he provided Gresham what the accused believed to be reasonable supervision in the Martin case.

The accused does not dispute that he had supervisory responsibility for Gresham or that he was Martin's

attorney of record. We find it highly probable that, consistent with the accused's deposition testimony, the accused did not supervise Gresham's opposition to the defense motions for summary judgment in the Martin matter. The accused violated DR 6-101(A). *See In re Spies*, 316 Or 530, 538, 852 P2d 831 (1993) (lawyer failed to act competently, in part, by failing to prepare certified law student to handle hearing).

### 2. DR 6-101(B)

DR 6-101(B) provides that a lawyer "shall not neglect a legal matter entrusted to the lawyer." The Bar also alleged that, by entrusting opposition of the summary judgment motions to Gresham, the accused violated that rule. The accused responds that Gresham had the requisite qualifications to be an effective advocate for clients in litigation.

To prove a violation of DR 6-101(B), the Bar must show a "course" of negligent conduct. *In re Meyer (II)*, 328 Or 220, 225, 970 P2d 647 (1999). The Bar has failed to prove by clear and convincing evidence that the accused has engaged in a "course" of negligent conduct in violation of DR 6-101(B).

### E. *Summary*

In sum, we find that the accused violated DR 1-102(A)(3) in both the Burke and Collins matters; DR 1-102(A)(4), DR 7-102(A)(5), and DR 7-110(B) in the Collins matter; DR 6-101(A), DR 7-106(C)(1) and DR 7-106(C)(7) in the Cassady matter; and DR 6-101(A) in the Martin matter. Those violations fall into four categories: misrepresentation and conduct prejudicial to the administration of justice; incompetence; *ex parte* contact; and misconduct at trial. We turn to the appropriate sanction. In that regard, the Bar argues that this court should affirm the trial panel sanction and disbar the accused. The accused responds that the complaint should be dismissed.

## III. SANCTION

In arriving at the appropriate sanction for lawyer misconduct, this court makes a preliminary determination by consulting the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA

Standards). *Gustafson*, 327 Or at 652. The ABA Standards direct us to analyze the accused's misconduct in light of the following factors: the duty violated, the accused's mental state at the time of the misconduct, the actual or potential injury that the accused's misconduct caused, and the existence of any aggravating or mitigating circumstances. ABA Standard 3.0. Finally, we analyze this court's case law to determine the sanction that should be imposed in the particular situation. *In re Devers*, 328 Or 230, 241, 974 P2d 191 (1999).

 We analyze the factors described above with respect to each of the categories of misconduct identified in this case: misrepresentation and conduct prejudicial to the administration of justice; incompetence; *ex parte* contact; and misconduct at trial.

A. *Preliminary Determination*

 1. Misrepresentation and Conduct Prejudicial to Administration of Justice

The accused's misrepresentations in the Burke and Collins matters violated his duty to the public to maintain personal integrity. ABA Standard 5.1. The accused violated his duty to the legal system to refrain from making false statements and misrepresentations. ABA Standard 6.1.

We find that the accused's misrepresentations were intentional. That is, the accused acted with a conscious objective or purpose to accomplish a particular result. ABA Standards at 7. In the Burke matter, the accused intentionally submitted a default judgment for the purpose of being awarded costs after leading Burke to believe that he would dismiss Shon's action if Burke agreed to the settlement. The accused's dishonesty caused Burke actual injury, because a default judgment was entered against her.

In the Collins matter, the accused wanted the pre-trial and trial dates changed, and he intentionally misrepresented to the trial judge that the judge had intended to change those dates. The accused also intentionally told several judges in the Collins matter that opposing counsel had made no effort to notify the accused of the hearing to quash

the subpoena that the accused had issued to the Safeco employee, apparently with the motive to impugn the integrity of opposing counsel. The accused's intentional misrepresentations created the potential for significant injury. As noted, the accused's misrepresentations to the trial judge regarding the "changed" pretrial conference and trial dates caused substantial harm to the administration of justice. The accused's misrepresentations in the Burke and Collins matters seriously adversely reflect on his fitness to practice law.

ABA Standard 5.11(b) makes disbarment the appropriate sanction when a lawyer engages in intentional, albeit noncriminal, misconduct that involves dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects upon the lawyer's fitness to practice law. ABA Standard 6.11 generally makes disbarment the appropriate sanction when a lawyer, with the intent to deceive the court, makes a false statement and causes serious or potentially serious injury to a party or causes a significant or potentially significant adverse effect on the legal proceeding. The ABA Standards call for such a harsh sanction because, as explained in the introduction to ABA Standard 5.0, "[t]he most fundamental duty which a lawyer owes the public is the duty to maintain the standards of personal integrity upon which the community relies." The ABA Standards suggest that disbarment is the appropriate sanction for the accused's misrepresentations.

## 2. Incompetence

Having agreed to represent a client, a lawyer must be competent to perform the services requested. ABA Standard 4.0. It is evident from the record that the accused tenaciously represented Cassady and believes that he did so competently. However, tenacity is not the same as competence, and, as our review of the record has shown, the accused did not represent either Cassady or Martin competently. In the Cassady litigation, the accused's incompetent trial techniques harmed the legal system and the parties. In the Martin matter, the accused's incompetence harmed his client. Disbarment generally is appropriate when a lawyer demonstrates a lack of understanding of the most fundamental legal doctrines or procedures and the client is actually or

potentially injured. ABA Standard 4.51. However, disbarment as a sanction should be imposed only on lawyers "whose course of conduct demonstrates that they cannot or will not master the knowledge and skills necessary for minimally competent practice." *Commentary* to ABA Standard 4.51. Suspension generally is appropriate when a lawyer engages in an area of practice in which the lawyer knows that he or she is not competent and causes injury or potential injury to the client. ABA Standard 4.52. Reprimand generally is appropriate when a lawyer: (1) demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or (2) is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client. ABA Standard 4.53.

Our review of the record in this case leads to the conclusion that disbarment would not be an appropriate sanction for the accuse's incompetence in the Cassady and Martin matters, because we are not persuaded that the accused is incapable of mastering the knowledge and skills necessary for minimally competent practice. Neither is it clear to us that the accused engaged in practice in an area of the law in which he knew he was not competent. However, the records of the Cassady and Martin matters reveal that the accused failed to understand relevant legal doctrines or procedures, and caused actual injury. In light of the significant sanction we impose for all the accused's misconduct, discussed below, we need not address what sanction would be appropriate if this proceeding involved only the accused's incompetence.

### 3. *Ex Parte* Contact

The accused violated his duties as a lawyer by engaging in *ex parte* communications with a judge in the Cassady matter. ABA Standard 6.3. We find the accused's mental state in filing the written disqualification motion without serving opposing counsel to be negligent, as he misunderstood his legal obligation to do so. In failing to serve opposing counsel with the disqualification motion, the accused caused actual injury. Opposing counsel arrived to argue the motion to compel, only to discover that the accused

had succeeded in disqualifying the judge who was assigned to hear the motion and delaying the hearing.

ABA Standard 6.33 provides that reprimand generally is appropriate when a lawyer is negligent in determining whether it is proper to engage in communication with an individual in the legal system, and causes injury or potential injury to a party. Standing alone, the accused's misconduct regarding his *ex parte* contact would merit a reprimand.

### 4. Trial Misconduct

The accused abused the legal process by repeatedly raising the issue of Huber's insurance to the jury during the Cassady trial. ABA Standard 6.2. As we have explained, we find that the accused acted intentionally. Injecting the existence of Huber's insurance at trial caused potential injury, because the threat of a mistrial hung over the proceedings after the accused mentioned insurance. The trial judge testified that he would have granted a mistrial if the defense had moved for one.

ABA Standard 6.21 provides that disbarment generally is appropriate when a lawyer knowingly violates a rule with the intent to obtain a benefit for the lawyer or another and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.

It appears that, in raising the issue of Huber's insurance in the Cassady trial, the accused intended to obtain a benefit for Cassady, namely, assuring the jury that it could award Cassady damages without harming Huber. The ABA Standards indicate that disbarment is the appropriate sanction for the accused's misconduct in intentionally and persistently attempting to interject the fact of Huber's insurance at trial.

In summary, the ABA Standards point to disbarment as the appropriate sanction for the accused's intentional misrepresentations and his trial misconduct. The ABA Standards point to a sanction short of disbarment for the accused's incompetence and his *ex parte* contact. We turn to aggravating and mitigating circumstances.

## B. *Aggravating and Mitigating Circumstances*

"[A]ggravating circumstances are any considerations, or factors that may justify an increase in the degree of discipline to be imposed." ABA Standard 9.21. The first aggravating factor in this proceeding is that the accused has a prior disciplinary offense. ABA Standard 9.22(a). In 1994, the accused stipulated to discipline for contacting a represented party without the permission or presence of that party's counsel, in violation of DR 7-104(A)(1). The accused received a public reprimand for that violation.[10]

In weighing the prior offense as an aggravating circumstance, we consider its relative seriousness and the resulting sanction; the similarity of the prior offense to the offense in the present case; the number of prior offenses; the relative recency of the prior offense; and the timing of the current offenses in relation to the prior offense and resulting sanction. We also consider whether the accused lawyer had been sanctioned for the prior offense before engaging in the misconduct at issue in the present case. *In re Jones*, 326 Or 195, 200, 951 P2d 149 (1997). Applying those considerations, we conclude that the accused's prior offense deserves little weight as an aggravating factor in this proceeding. His record of discipline is limited to one instance of misconduct for which he received only a public reprimand. That sanction regarded a matter that is not similar to the misconduct at issue here, and the misconduct occurred several years ago. We turn to other aggravating circumstances.

The accused has engaged in misconduct involving four different client matters. In three of those matters, the accused committed multiple ethical violations. ABA Standard 9.22(d). The accused has failed to acknowledge the wrongful nature of any of his misconduct. ABA Standard 9.22(g). The accused has substantial experience in the practice of law, having been admitted to the bar in 1987. ABA Standard 9.22(i).

Mitigating circumstances are "any considerations or factors that may justify a reduction in the degree of discipline

---

[10] The Bar had charged the accused with violating several disciplinary rules, but the stipulation for discipline involved only DR 7-104(A)(1).

to be imposed." ABA Standard 9.31. The only mitigating factor here is that the accused cooperated with the Bar during its initial investigation. ABA Standard 9.32(e).

## C. *Oregon Cases*

In past cases, when this court has found misrepresentation in addition to other misconduct, the court has imposed lengthy suspensions or disbarment. *See In re Gallagher*, 332 Or 173, 190, 26 P3d 131 (2001) (two-year suspension for two misrepresentations plus other misconduct); *In re Wyllie*, 327 Or 175, 184, 957 P2d 1222 (1998) (two-year suspension for submitting false MCLE forms and failing to cooperate with investigation); *In re Recker*, 309 Or 633, 641, 789 P2d 663 (1990) (two-year suspension for misrepresentation to court plus other disciplinary rule violations). However, multiple misrepresentations to courts, the Bar, or clients, combined with other serious ethical violations, has led to disbarment. For example, this court disbarred a lawyer who notarized false documents and made misrepresentations to clients in an unlawful living trust scheme. *In re Morin*, 319 Or 547, 566, 878 P2d 393 (1994). The accused in that proceeding also failed to respond truthfully to the Bar's inquiries during its investigation. *Id.* at 564. This court also disbarred a lawyer who filed a false affidavit with a probate court, committed a misdemeanor, and violated several other disciplinary rules. *In re Hawkins*, 305 Or 319, 326, 751 P2d 780 (1988). Further, this court disbarred a lawyer who, among other things, made multiple misrepresentations to clients and court staff, represented a client incompetently, and neglected a legal matter. *Spies*, 316 Or at 541. However, the lawyer's conduct in that proceeding was part of a downward personal spiral of "increasingly irresponsible" conduct. *Id.* at 540. Other situations in which this court has disbarred a lawyer have involved serious misconduct on the heels of an already lengthy record of disciplinary violations. *See, e.g., In re Miller*, 310 Or 731, 739, 801 P2d 814 (1990) (multiple misrepresentations, excessive fee, lengthy disciplinary record).

In this proceeding, the accused not only made misrepresentations in the Burke and Collins matters, he provided incompetent representation in the Cassady and Martin

matters. We note that, in *Spies*, misrepresentation and incompetence played a significant role in the decision to disbar the lawyer. *Spies*, 316 Or at 540. However, in the case that is most similar factually to this case, this court imposed a lengthy suspension rather than disbarring the lawyer. In *In re Chambers*, 292 Or 670, 642 P2d 286 (1982), the lawyer negligently failed to prepare and return a proper summons and failed to communicate with his client. In a criminal matter, the lawyer was incompetent in conducting his investigation of exculpatory evidence on behalf of his client and subsequently trying the case "by the seat of his pants." *Id.* at 678. In a third matter, the lawyer knowingly made a false statement of fact when he represented to an accident victim that he was an insurance agent. *Id.* at 680-81. When *Chambers* was decided, the maximum suspension possible short of disbarment was three years. *See* BR 6.1(a)(iii) (three-year suspension maximum length for proceedings commenced before January 1, 1996).[11] This court held that a two-year suspension was the appropriate sanction. *Chambers*, 292 Or at 682.

In this proceeding, the Bar, like the trial panel, asserts that disbarment is required to protect the public and the integrity of the profession. However, this court's case law does not support disbarment for the accused's misconduct, although it does support a lengthy suspension.

The accused's conduct is more egregious than the conduct in *Chambers*. The accused acted dishonestly in submitting a default judgment after settling the dispute with Burke. The accused intentionally misrepresented to the trial judge that the judge had ordered a change in the pretrial conference and trial dates in the Collins matter. The accused intentionally sought to impugn the integrity of opposing counsel in the Collins matter when he claimed that opposing counsel had made no effort to notify him of a hearing to quash the subpoena that he had served on a Safeco employee. The accused deliberately and repeatedly injected the issue of insurance into a trial to prejudice the jury in favor of his client, Cassady. The trial judge found the accused's representation of Cassady to have been the worst performance he had

---

[11] Under BR 6.1(a)(iv), the maximum period of suspension short of disbarment in proceedings commenced after December 31, 1995, is five years.

seen as a trial judge, resulting in prejudice to Cassady's interests. The accused's failure to assure that evidence was presented to defeat the motions for summary judgment in the Martin matter also damaged his client.

The foregoing examples, taken together, reveal a disturbing pattern of a lawyer who disrupts the functioning of the legal system and the interests of parties in that system through a combination of intentional and negligent misconduct. Considering together the ABA Standards, the aggravating factors, and this court's case law, we conclude that a three-year suspension from the practice of law is the appropriate sanction. Requiring the accused to show the requisite character and fitness to practice law for readmission under BR 8.1(a)(iv) following that suspension will protect the public and the integrity of the profession.

The accused is suspended for three years, effective 60 days from the date of the filing of this decision.

# PETITIONS FOR REVIEW

## (36 P3d 974)

## ALLOWED

### November 27, 2001

Potter v. Schlesser Company, Inc. (A105159)(S48493)(171 Or App 646)
Woodbury v. CH2M Hill, Inc. (A103037)(S48592)(173 Or App 171)

## DENIED

### November 27, 2001

Andersen v. Swift Transportation (A108095)(S48920)(176 Or App 361)
Astorga, Eliazar Galvez v. Palmateer (A109217)(S48795)(175 Or App 437)
Birch, Martin v. Thompson (A100339)(S48893)(175 Or App 553)
Butler, John W., III v. Lampert (A110427)(S48807)(175 Or App 368)
Church at 295 S. 18th St., St. Helens v. Employment Department (A109854)
 (S48847)(175 Or App 114)
Cole v. Department of Motor Vehicles (DMV) (A108349)(S48815)(172 Or App 132)
Eaton, Arnold H. v. Palmateer (A112088)(S48840)(175 Or App 553)
Goodlette, Robert v. Board of Parole and Post-Prison Supervision (A103506)
 (S48878)(174 Or App 611)
Goodwin, Mark v. Thompson (A104968)(S48653)(174 Or App 564)
Hayes v. Olmsted & Associates, Inc., and Olmsted (A106401)(S48899)(173 Or App
 259)
J & J Outdoor Advertising v. Department of Transportation (A110238)(S48601)
 (173 Or App 644)
Maquiel v. Adkins (A105437)(S48735)(175 Or App 43)
Montoya, Roland J. v. Johnson (A100422)(S48725)(174 Or App 391)
Odle, Vernon G. v. Lampert (A110099)(S48907)(174 Or App 320)
Papineau, James A. v. Palmateer (A112087)(S48890)(176 Or App 649)
Stadelman v. City of Bandon (A105685)(S48802)(173 Or App 106)
State ex rel Juvenile Department of Multnomah County v. Slaney (A108624)
 (S48938)(176 Or App 648)
State ex rel State Office for Services to Children and Families v. Amador (A113025)
 (S48931)(176 Or App 237)
State ex rel State Office for Services to Children and Families v. Frier (A111913)
 (S48850)(175 Or App 515)
State ex rel State Office for Services to Children and Families v. Lehtonen
 (A108746)(S48515)(172 Or App 584)
State v. Amini, Dariush David (A88710)(S48887)(175 Or App 370)
State v. Camarato, David John (A110674)(S48891)(175 Or App 553)
State v. Drake, David Alan (A106174)(S48650)(173 Or App 218)
State v. Hinshaw, Wesley Scott (A110891)(S48906)(175 Or App 553)
State v. Lazenby, Dennis (A106463)(S48658)(173 Or App 446)
State v. Phillips, James Dean (A101999)(S48818)(175 Or App 291)
State v. Thomas, Michael Darnell (A109985)(S48852)(176 Or App 170)
Wilbur Residents for a Clean Neighborhood v. Department of Environmental
 Quality and Heard Farms, Inc. (A109651)(S48925)(176 Or App 353)

**(36 P3d 974, 975)**

**December 4, 2001**

Gregory v. Lovlien (A107198)(S48659)(174 Or App 483). Gillette and Leeson, JJ., would allow.

Middleton v. Bradbury (A110807)(S48846)(175 Or App 553)

Richie, Jeffrey L. v. Lampert (A105298)(S48930)(176 Or App 523), *denial withdrawn* 333 Or 205

State v. Bracken, Jeremy Owen (A106828)(S48882)(174 Or App 565)

State v. Davis, Brian Leroy (A102349)(S48780)(174 Or App 405)

State v. Lara, Horacio Saldana (A109200)(S48912)(176 Or App 359)

State v. Wilkins, Earl Douglas (A91831)(S48858)(175 Or App 569)