242 P.3d 638 (2010)
238 Or. App. 65
Kevin MARKER, Plaintiff-Respondent,
v.
Robert MARKER and Marker Industries, Inc., an Oregon corporation, Defendants-Appellants.
160619101; A138516.
Court of Appeals of Oregon.
Submitted February 5, 2010.
Decided October 20, 2010.
*639 Jeffrey E. Potter and Gardner, Honsowetz, Potter, Budge & Ford, filed the opening brief for appellants. On the reply brief was Judith Giers.
Scott J. Mahady and Moore & Associates filed the brief for respondent.
Before LANDAU, Presiding Judge, and SCHUMAN, Judge, and ORTEGA, Judge.
SCHUMAN, J.
As part of a judgment requiring defendant Robert Marker to buy plaintiff's shares in a closely held corporation, the trial court appointed an appraiser to help determine the value of those shares. Defendants did not appeal the judgment. When the appraiser submitted his valuation, but before the court decided whether, or to what extent, it would rely on that valuation, defendants filed a "Motion for Supplemental Relief and Clarification" requesting the court to set a hearing where they could challenge the appraiser's valuation. The court denied the motion, and defendants argue that, in so doing, the court committed legal error. We affirm.
Marker Industries, Inc., a trucking business, was incorporated in 1982. Defendant Robert Marker owned 52 percent of the corporation's stock and his son, Kevin, owned the remaining 48 percent.[1] Both Robert and Kevin were corporation employees. After several years, disputes arose between the two and, on July 31, 2006, Robert fired Kevin and stopped sharing any corporation information with him. Kevin brought this action against Robert for "shareholder remedies" based on oppressive conduct.[2] Robert and Marker Industries filed a counterclaim for conversion.
During the two-day trial, the parties presented extensive evidence concerning (among other things) the value of the corporation. At the close of the trial, the court made an oral ruling in favor of Kevin on his shareholder oppression claim and in favor of Robert and Marker Industries on the counterclaim for conversion. In the same ruling, the court announced that, as a remedy, it would require Robert to purchase all of Kevin's shares in the corporation at "fair value" and that it would "determine the value with the assistance of [an appraiser]." Robert's damages against Kevin for conversion, the court ordered, would be set off against the purchase of Kevin's stock. On July 2, 2007, the oral ruling was reduced to a written order that provided:
"1. All parties will cooperate in whatever manner required by the appraiser and members of his staff, including, without limitation, provide to the appraiser all information and documents requested; provide to the appraiser unrestricted access to the corporation's assets wherever located; *640 and provide to the appraiser unrestricted access to information in the hands of the corporation's service providers such as accountants.
"2. The attorneys for the parties will not initiate communication or attempt to initiate communication with the appraiser.
"3. The appraiser will begin work immediately upon his appointment under this order.
"4. The appraiser will provide this court with his opinion of the fair value of the stock held by plaintiff Kevin Marker in the corporation as of July 31, 2006[, the date Kevin was forced out of the corporation]."
Neither party objected to the oral or written order.
Approximately two months later, on August 31, the court entered a general judgment that provided, in part:
"1. Defendant Robert Marker shall purchase all of [Kevin's] shares in defendant Marker Industries, Inc., for their fair value and under the following terms:
"1.1 This court will determine the value with the assistance of [an appraiser], appointed by the court's order filed July 2, 2007, under the terms of that order.
"1.2 The purchase order shall be consummated within 20 days after the appraisal is complete, unless before that time Marker Industries, Inc., files with this court a notice of its intention to dissolve, and articles of dissolution are properly filed with the Secretary of State within 50 days after the filing of the notice with this court.
"1.3 This court will retain jurisdiction to enforce this purchase order by, among other remedies, ordering that Marker Industries, Inc., be dissolved if the purchase is not completed as this court sets out in this judgment.
"* * * * *
"IT IS FURTHER ADJUDGED that defendant Marker Industries, Inc., have judgment against plaintiff on its claim for conversion in the sum of $15,031, which amount shall be used as a set of [sic] against the purchase of plaintiff's shares of stock."
About eight months after the general judgment was entered, the appraiser submitted his report to the trial court. According to the appraiser, "the fair market value of a 48 percent ownership interest in Marker Industries, Inc., as of July 31, 2006, after applicable discounts, is $78,000." The appraiser went on to say that, based on his understanding of Oregon law, the "fair value standard" to be applied "excludes any discounts that may be applicable under the fair market value standard (e.g. minority interest discount, discount for lack of marketability)." Based on that understanding, the appraiser believed the fair value of the shares was $134,000.
After the appraiser's report was submitted to the court and the parties, but before the court acted on it, defendants filed a "Motion for Supplemental Relief and Clarification." In that motion, defendants moved the court to
"1. Clarify that the 20-day period set forth in paragraph 1.2 of the general judgment entered herein will commence when the court makes its final determination of value pursuant to paragraph 1.1 of the general judgment, and that the appraisal is not `complete' before entry of that order.
"2. Set a date for hearing to afford the parties the opportunity to submit additional testimony, evidence and argument regarding the value of defendant Marker Industries, Inc., including an opportunity to argue which of the two value determinations made by the appraiser are appropriate for consideration by the court under the circumstances."
The sole reason that defendants cited in support of their motion was "changed market conditions which have arisen since the date of valuation."
The court then held a hearing on defendants' motion. Robert argued that he wanted the court to set another hearing at a later date, where he could cross-examine the appraiser, argue that the court should have adopted the discounted value of the corporation, and present evidence of changed circumstances. Kevin responded that the court *641 had correctly followed Oregon case law, in particular Hayes v. Olmsted & Associates, Inc., 173 Or.App. 259, 21 P.3d 178, rev. den., 333 Or. 73, 36 P.3d 974 (2001), in adopting the nondiscounted value. Robert had the last word, in which he did not respond to Kevin's argument regarding the valuation but, instead, reiterated his request for a future hearing on that issue. The court took the matter under advisement and shortly thereafter issued the order from which defendants now appeal. The order denied defendants' request for an additional hearing. It also stated that the court had "reviewed the appraisal and `Fair Value' figure reached by the appraiser and concluded that such `Fair Value' is consistent and appropriate." The court ordered defendants to pay $134,000 within 20 days of March 19, 2008, the date of the hearing on defendants' motion. The court further explained that
"[t]he court intended that the methodologies used by [the appraiser] would be the appropriate manner for determining `fair value.' The court did not intend to provide or afford the parties an opportunity to submit additional testimony, evidence, and argument regarding the value of defendant Marker Industries, Inc., after the completion of the appraisal."
On appeal, defendants assign error to the court's order on defendants' motion. Their assignment comprises several arguments. First, they appear to argue that the court erred by "ced[ing its] decision making authority" to the appraiser, a "nonjudicial third party." Second, they argue that the court erred in refusing their request to set and hold a hearing where they could present testimony, evidence, and argument challenging the appraiser's valuation. Third, they argue that the court erred in setting the deadline for the share purchase at 20 days from the hearing on defendants' motion instead of 20 days from the requested hearing to which they believed they were entitled.
We readily reject defendants' first argument. The court said orally at the close of the trial that it would "determine the fair value with the assistance of an appraiser"; the court's written judgment stated, "This court will determine the value with the assistance of" the court-appointed appraiser; and the court's order denying defendants' motion stated that the court "adopted" the appraiser's valuation after having "reviewed the appraisal and `Fair Value' figure reached by the appraiser and concluded that such `Fair Value' is consistent and appropriate." (Emphases added.) In arguing that the court ceded decision-making authority to the appraiser, defendants are asking us, in effect, to find that the court failed to keep its promise to exercise independent judgment with the aid of the appraiser, and then (not to mince words) lied by asserting that it had done so. The only evidence that defendants cite in support of this startling and reckless contention is that the court found a value that was not as low as defendants would have liked. We reject defendants' first argument with no further discussion.
Defendants' third argumentthat the court should have ordered the share purchase to occur 20 days after the proposed hearing where defendants could present testimony, evidence, cross-examination, and argument challenging the appraiser's valuationwould merit discussion only if we were to agree with defendants' second argument, that is, that they were entitled to such a hearing. For the reasons set out below, we reject that argument.
At the outset, we emphasize the narrow scope of defendants' appeal. They do not appeal the court's determination that they acted in an oppressive manner; they do not appeal the court's order appointing an appraiser; they do not ask us to exercise de novo review of the valuation; and they do not appeal the part of the general judgment stating that the court "will determine the value with the assistance of" a court-appointed appraiser (although, as discussed, they allege that the appraiser and not the court made the ultimate decision). The appeal challenges only the court's decision not to hold a second post-trial hearing (the first being the hearing on their motion for a subsequent hearing) where defendants could provide additional evidence, testimony, cross-examination, and legal argument. Further, they do not argue that they had a right to the hearing by virtue of the Due Process Clause or *642 any other constitutional provision. They argue only that they had a statutory right to a hearing. That right, they contend, derives from ORS 60.952.
Under that statute, if a court determines that "those in control of [a close] corporation have acted, are acting or will act in a manner that is * * * oppressive," the court may order, among other remedies, "[t]he purchase by the corporation or one or more shareholders of all of the shares of one or more other shareholders for their fair value and on the terms determined under subsection (5) of this section." ORS 60.952(1); ORS 60.952(1)(b); ORS 60.952(2)(k). The terms under which the court may determine fair value, then, are spelled out in ORS 60.952(5). The relevant subsections of that provision state:
"(5)(a) If the court orders a share purchase, the court shall:
"(A) Determine the fair value of the shares, with or without the assistance of appraisers, taking into account any impact on the value of the shares resulting from the actions giving rise to a proceeding under subsection (1) of this section;
"(B) Consider any financial or legal constraints on the ability of the corporation or the purchasing shareholder to purchase the shares;
"* * * * *
"(c) After the purchase order is entered and before the purchase price is fully paid, any party may petition the court to modify the terms of the purchase, and the court may do so if the court finds that the modifications are equitable."
(Emphasis added.) Defendants rely primarily on the second italicized provision, ORS 60.952(5)(c). They contend that the provision requires the court to afford them an opportunity to, among other things, cross-examine the appraiser so that the court may assess his credibility based on demeanor and to present evidence of changed circumstances since the date of the appraisal.
We conclude that defendants read too much into ORS 60.952(5)(c). That provision imposes no obligations on the court. It is subsection (5)(a) that imposes obligations on the court ("the court shall * * *"), for example, the obligation to determine fair value (with or without an appraiser). Defendants conflate subsection (5)(a) with (5)(c) in concluding that the court must meet the obligations set out in (5)(a) by holding a formal hearing. However, subsection (5)(c) does not require or even suggest a hearing; it provides only that "any party may petition the court to modify the terms of the purchase." (Emphasis added.) A petition is "[a] formal written request presented to a court or other official body." Black's Law Dictionary 1261 (9th ed. 2009). A "hearing" of the type requested by defendants is something entirely different, and one need not occur every time a petition is filed. Defendants cite no authority, nor are we aware of any, that would support the argument that, when the legislature permits a party to "petition" the court, the court is automatically required to convene a hearing, complete with all of the formalities and procedures that the term implies. For example, in a protective proceeding, "[a]ny person who is interested in the affairs or welfare of a respondent may file a petition for the appointment of a fiduciary or entry of other protective order." ORS 125.010(1). The respondent has a right to request a hearing, ORS 125.070(2)(e)(C), and under some circumstances, the court must hold one. ORS 125.080(2) ("A hearing must be held on a petition * * * if an objection is filed to the petition * * *."). If those circumstances do not occur, however, no hearing is required: "The court may require that a hearing be held on any petition or motion in a protective proceeding." ORS 125.080(1) (emphasis added). Thus, either the legislature or the United States Constitution may require a hearing on a petition; defendants do not argue for a constitutional requirement, and the legislature has not imposed one.
Further, defendants filed their motion seeking a hearing to modify the terms of the purchase order on March 17, 2008. At that time, the court had received the appraisal, but it had not adopted it. ORS 60.952(5)(c) allows a petition to "modify the terms" of a purchase. Thus, when defendants filed their motion for a hearing to modify the court's valuation, there was no valuation to modify. *643 And finally, after defendants submitted their "Motion for Supplemental Relief and Clarification," the court did hold a hearing, during which defendants had the opportunity to present arguments in support of modifying the purchase order. Insofar as the court declined to order another hearing, it did not err.[3]
Affirmed.
NOTES
[1] To avoid confusion, we refer to the two Markers by their first names and to defendant Marker Industries, Inc., as Marker Industries.
[2] Kevin also brought claims for breach of fiduciary duty, defamation, and conversion. The court ruled against him on the defamation and conversion claims and dismissed the breach of fiduciary duty claim as moot. Those claims and their outcomes are not relevant to this appeal.
[3] The court's order announcing its decision also states: "The court did not intend to provide or afford the parties an opportunity to submit additional testimony, evidence, and argument regarding the value of defendant Marker Industries, Inc., after completion of the appraisal." That statement, which is not part of the operative language of the order, appears inconsistent with ORS 60.952(5)(c) insofar as the statute affords the parties an opportunity to submit material to the court in an attempt to persuade it to modify the terms of the purchase (and, by implication, to have the court at least consider the material). If the record demonstrated, and defendants argued, that defendants presented such a petition to the court and that the court refused to consider it, then this appeal would be in a different posture.